Edward G. Walker v. Commissioner. George G. Walker v. Commissioner. Marvel Gamble Walker v. Commissioner.
Walker v. Commissioner
Docket Nos. 47663, 47664, 47665.
United States Tax Court
T.C. Memo 1955-63; 1955 Tax Ct. Memo LEXIS 275; 14 T.C.M. (CCH) 201; T.C.M. (RIA) 55063; March 17, 1955
*275 J. Ferdie Johnson, Esq., Burk Benett Building, Fort Worth, Tex., and Gilbert L. Jackson, Esq., for the petitioners. Paul M. Newton, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in the estate tax of Ola Gamble, deceased, in the amount of $2,806.67 and has asserted same in its entirety against each of the petitioners herein as transferees of said estate, as follows: Docket No.
Petitioner
Deficiency
47663
Edward G. Walker
$2,806.67
47664
George G. Walker
2,806.67
47665
Marvel Gamble Walker
2,806.67
The issues for decision are: What was the fair market value on July 11, 1949, date of Ola Gamble's death, of certain real property then owned by her, viz: (1) 482.23 acres of land in Tarrant County, Texas; (2) a four-unit apartment house located in Forth Worth, Texas. By stipulation filed herein, each of the petitioners admits his liability as transferee for any deficiencies in estate tax that may be determined to be due by the estate of Ola Gamble, deceased. Findings of Fact Ola Gamble, herein called decedent, a resident of Fort Worth, Texas, died testate *276 on July 11, 1949, at the age of 75. The petitioners herein are devisees and legatees under decedent's will, which was probated in the County Court of Tarrant County, Texas. Petitioner Marvel Gamble Walker is a daughter of decedent, and the other two petitioners are grandsons of decedent. The estate tax return for the estate of Ola Gamble was timely filed with the collector of internal revenue for the second district of Texas. The estate declined to use the optional valuation date. Included in the real estate listed in Schedule A of the estate tax return were the following two items in the listed valuations at date of death: "Item 1. Lot 1, Males Subdivision, Block 9, College Hill Addition to the City of Fort Worth, known as 803 College Avenue, together with improvements - $15,000.00. "Item 3. 482.23 acres of land in Tarrant County, Texas, being 177.37 acres of the E. W. Billington Survey, 61.96 acres of the E. T. Rice Survey, 170.8 acres of the W. E. Boswell Survey, and 72.1 acres of the Daniel Perry Survey - $24,111.50." For brevity, "Item 1" above will be referred to herein as the apartment house, and "Item 3" as the acreage property. The Acreage Property The 482.23 *277 acres of land is located about 12 miles from Forth Worth. In 1949, it consisted of pasture land and some timber land, and was enclosed with a three-strand barbed wire fence. Practically none of it was in cultivation. About half of the soil was of a sandy quality and the other half was so-called "gray land," and some natural grass was growing on the tract. The improvements consisted of two houses, a barn, and a windmill, all very old, in a bad state of repair and of small value. On August 16, 1949, the Fort Worth Real Estate Board issued a written certificate of appraisal stating therein that in its opinion the fair market value of the 482.23 acres as of July 11, 1949, was $50 per acre, or a total of $24,111.50. The estate of decedent used this amount as a valuation of the acreage property. On May 29, 1951, the 482.23-acre tract was sold to E. D. Allen for approximately $38,000, or $80 per acre, with one-half of the minerals reserved. The terms of sale were $10,000 down and the balance, $28,000, in annual installments of $2,000 at 4 1/2 per cent interest. From July 11, 1949, to May 20, 1951, land values in Tarrant County, Texas, increased 30 per cent. Sales of land in that county *278 largely on a credit with long-deferred payments at a low interest rate, such as were the terms in the sale to Allen, would bring a price of at least 10 per cent higher than a sale for all cash. Respondent in the deficiency notice determined the fair market value of the 482.23 acres of land at $32,000, or approximately $66.35 an acre, and the fair market value of the apartment [house] at $20,000. The fair market value of the 482.23 acres of land on July 11, 1949, was $55 per acre, being a total value of $26,522.65. The Apartment House This property, on July 11, 1949, was a two-story building containing four apartments of four rooms and a bath each and a garage apartment. The building was constructed in 1912, as a two-story frame house, in 1920 it was remodeled into apartments and veneered with brick, and in 1944 it was converted from a duplex to a four-unit apartment. It is on a corner lot in one of the older sections of Fort Worth which has been largely converted into rooming houses and doctors' clinics. The monthly rental of the two downstairs apartments was $50 and $45, respectively, the two apartments upstairs rented for less and the garage apartment at $35. All utilities *279 and repair bills were paid by the landlord. On August 16, 1949, the Fort Worth Real Estate Board issued a certificate of appraisal, stating that in its opinion the fair market value of the property was $15,000. Decedent's estate used this amount as the valuation of the property. On March 23, 1950, petitioners George G. Walker and Edward G. Walker each sold his undivided one-third interest in the apartment property to petitioner Marvel G. Walker for $5,000. The sales were made to provide funds with which to pay the inheritance taxes. In 1948 the City of Fort Worth revised its assessment rolls, and its tax rolls for that year reflected two valuations, one prior and one subsequent to revision. The assessed valuations in 1948 of the apartment house were $10,150 and $15,530. On July 11, 1949, the fair market value of the apartment property here in question was $15,000. Opinion The salient and essential facts in determining the value of the two properties in question are set forth in our findings of fact. In arriving at our ultimate findings as to the fair market value of both of the properties in question, we carefully reviewed and considered all of the evidence and the record *280 as a whole, and our valuation as to each of said properties is based thereon. We heard the testimony of two expert witnesses, both in behalf of petitioners, both of whom had been engaged in the real estate business in Fort Worth for many years and knew real estate values in Tarrant County of both urban and rural property, and were experienced land appraisers. They were not selected by petitioners, but were appointed to appraise these properties by the Fort Worth Real Estate Board, a reputable organization. After such appointment they made a personal inspection of both of the properties and reported same to the Board, and this report was reviewed by the Board and approved by it. Both witnesses testified at length on direct and cross examination as to their valuations, and the manner of arriving at same. Respondent offered no expert testimony as to the value of either property. As to the value of the apartment, his principal witness was an internal revenue agent who had examined the deed records and testified as to considerations recited in various sales of property in the locality where the apartment was located. We were not impressed by this testimony, since the transactions testified *281 to related mainly to other years and to improvements of a different kind. We sustain petitioner's contention as to the value of the apartment house. As to the value of the acreage property, respondent relied mainly upon the sale of same within two years after decedent's death for $80 an acre. This fact we have considered, but in so doing we have also considered the enhancement of land values within that period and the difference in price between a cash and credit sale, and after considering these and other factors, we have concluded that $55 an acre was the fair market value of the acreage property. Other adjustments in the deficiency notice are not contested. Decision will be entered under Rule 50.